UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA          :

      - v. -                        :       **SEALED INDICTMENT**

JUNYI LIU,                        :       21 Cr. ___ (___)
    a/k/a "Jenny,"
GLEEN ANCIRO,                     :
NOEMI ALGODON,
MOHAMED ELMANDOUH,                :
GERARD ESTRELLA,
RAMON GARCIA, III,                :
HENLER DATU TAHIL
HONGXING WANG, and                :
ZIHAO CHEN,
                                  :
          Defendants.         :

- - - - - - - - - - - - - - - - - - - X

21 CRIM 592

## COUNT ONE

(Conspiracy to Commit Health Care Fraud)

The Grand Jury charges:

### THE HEALTH CARE FRAUD SCHEME

### BACKGROUND

1.   The Medicare Program ("Medicare") is a federal health care program providing benefits to persons who are over the age of 65 or disabled.  Medicare is administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services. Individuals who receive benefits under Medicare are referred to as Medicare "beneficiaries."

2.   Medicare is broken into several different parts.  Part
A covers health care services provided by hospitals, skilled
nursing facilities, hospices, and home health agencies.  Part B
covers, among other things, certain physician services and
outpatient services, including physical therapy.  Part C, also
known as the Medicare Advantage program, provides a Medicare
beneficiary with the option to receive Medicare benefits through
a private health insurance company approved by Medicare, rather
than through Part A and/or Part B.  Part C provides Medicare
beneficiaries with all the services provided under Medicare
Parts A and B (except hospice), as well as some supplemental
benefits.  Approved private health insurance companies
participating in Part C are responsible for receiving,
adjudicating, and paying the claims of authorized network
providers seeking reimbursements for the cost of health care
benefits, items, and services supplied to Part C beneficiaries.
Medicare, through CMS, compensates private health insurance
companies participating in Part C.

3.   Medicare, including Part C plans offered by approved
private health insurance companies, and other health insurance
plans offered by private health insurance companies ("Other
Insurance Providers," and, with Medicare, the "Insurance
Providers") each constitute a "health care benefit program," as
defined by Title 18, United States Code, Section 24(b).

4.   In general, the Insurance Providers cover costs related to medical treatment -- such as the costs of physical therapy and acupuncture services -- only if, among other requirements, such services are medically necessary, rendered by qualified health care providers, and actually performed.

5.   Medical providers and suppliers that seek to participate in Medicare and to bill for the cost of their treatment of Medicare beneficiaries are required to apply for and receive a provider identification number ("PIN") or provider transaction access number ("PTAN"). Physicians and other medical providers and suppliers are also required to apply for and receive a National Provider Identifier number ("NPI number").

6.   To receive reimbursement from the Insurance Providers for a covered service, a medical provider is required to submit a claim. The claim forms typically require provision of certain information, including: (i) the beneficiary's name and identification number; (ii) the NPI number of the qualified health care provider who provided the health care benefit, item, or service that was the subject of the claim; (iii) the health care benefit, item, or service that was provided or supplied to the beneficiary; (iv) the billing codes for the benefit, item, or service; and (v) the date upon which the benefit, item, or service was provided or supplied to the beneficiary. By

submitting the claim, the provider certifies, among other things, that the services were in fact provided to the beneficiary and were medically necessary.

## Relevant Persons and Entities

7.   At all times relevant to this Indictment, JUNYI LIU, a/k/a "Jenny," the defendant, was a licensed acupuncturist and operator of several entities involved in the scheme, including American NY Acupuncture, P.C.; East and West Physical Therapist and Acupuncture, P.L.L.C.; HBL Acupuncture, P.C.; and Wonderful Acupuncture, P.C.   LIU operated office locations in Manhattan, Queens, and Brooklyn (the "Offices") from which LIU and her partners fraudulently billed the Insurance Providers for physical therapy and acupuncture services that were not rendered in the manner represented or not rendered at all.

8.   At all times relevant to this Indictment, JUNYI LIU, a/k/a "Jenny," the defendant, partnered with other licensed medical professionals to execute the scheme.   These partners included GLEEN ANCIRO, NOEMI ALGODON, MOHAMED ELMANDOUH, GERARD ESTRELLA, RAMON GARCIA, III, and HENLER DATU TAHIL, the defendants, all of whom were licensed physical therapists, and HONGXING WANG, the defendant, who was a licensed acupuncturist (collectively, the "Partners").   The Partners' roles in the scheme typically included: (i) allowing the Offices to use their enrollments with the Insurance Providers to submit to the

Insurance Providers materially false and fraudulent claims for reimbursement for physical therapy and acupuncture services that were not rendered in the manner represented or were not rendered at all; (ii) creating materially false medical documentation, which stated that certain physical therapy and acupuncture services had been rendered, when such services in fact were not rendered in the manner represented or were not rendered at all; and (iii) contributing financing for the Offices, including for the payment of cash kickbacks to the Offices' patients (the "Paid Patients") to induce those patients to provide their insurance information and receive medically unnecessary and/or non-existent services at the Offices.

9.    GLEEN ANCIRO, the defendant, was a licensed physical therapist and the operator of Top One Physical Therapy, P.C.

10.    NOEMI ALGODON, the defendant, was a licensed physical therapist and the operator of NBT Physical Therapy, P.C.

11.    MOHAMED ELMANDOUH, the defendant, was a licensed physical therapist and the operator of Protection Physical Therapy, P.C.

12.    GERARD ESTRELLA, the defendant, was a licensed physical therapist and, along with RAMON GARCIA, III, the defendant, the operator of Frank Zhan Best Physical Therapy, P.C.

13. RAMON GARCIA, III, the defendant, was a licensed physical therapist and, along with GERARD ESTRELLA, the defendant, the operator of Frank Zhan Best Physical Therapy, P.C.

14. HENLER DATU TAHIL, the defendant, was a licensed physical therapist and the operator of HDT Tender Loving Care Physical Therapy, P.C.

15. HONGXING WANG, the defendant, was a licensed acupuncturist and, along with JUNYI LIU, a/k/a "Jenny," the defendant, the operator of NYOH Acupuncture, P.C.

16. ZIHAO CHEN, the defendant, worked as a cashier at one or more of the Offices. In that capacity, CHEN was responsible for paying cash kickbacks to Paid Patients.

### OVERVIEW OF THE HEALTH CARE FRAUD SCHEME

17. From at least in or about June 2018 through in or about September 2021, JUNYI LIU, a/k/a "Jenny," GLEEN ANCIRO, NOEMI ALGODON, MOHAMED ELMANDOUH, GERARD ESTRELLA, RAMON GARCIA, III, HENLER DATU TAHIL, HONGXING WANG, and ZIHAO CHEN, the defendants, together with others known and unknown (collectively, the "Co-Conspirators"), agreed to execute and executed a widespread fraudulent scheme to unlawfully enrich themselves by submitting and causing to be submitted to Medicare and Other Insurance Providers claims seeking reimbursement for physical therapy and acupuncture services even though such

- 6 -

services were not medically necessary, were not provided as billed, were procured by cash kickbacks, and otherwise did not qualify for reimbursement.

18.  Specifically, the Co-Conspirators submitted and caused to be submitted false and fraudulent claims to the Insurance Providers that medically necessary physical therapy and acupuncture services had been provided to beneficiaries by licensed physical therapists and acupuncturists when, in fact, such services were not medically necessary, had not been provided in the amount or manner claimed, and had been induced by the payment of cash kickbacks.

19.  In furtherance of the scheme, the Co-Conspirators falsified and caused to be falsified patient medical records to reflect, among other things, that physical therapy and acupuncture services had been provided, when, in fact, beneficiaries typically received little more than a massage, which did not qualify for reimbursement, and in some instances received no services at all.

20.  As a consequence of the above-described scheme, many of the claims submitted by the Co-Conspirators to the Insurance Providers were false and fraudulent.  The submitted claims during the relevant time period totaled more than $20 million, resulting in losses of millions of dollars.

Means and Methods of the Conspiracy

21.  From at least in or about June 2018 through at least
in or about September 2021, JUNYI LIU, a/k/a "Jenny," the
defendant, operated the Offices, whose primary purpose was
enrichment of the Co-Conspirators by billing and receiving
payment for medically unnecessary and/or non-existent physical
therapy and acupuncture services.

22.  In furtherance of the scheme, JUNYI LIU, a/k/a
"Jenny," the defendant, partnered with licensed physical
therapists and acupuncturists.  These Partners included GLEEN
ANCIRO, NOEMI ALGODON, HENLER DATU TAHIL, MOHAMED ELMANDOUH,
GERARD ESTRELLA, RAMON GARCIA, III, and HONGXING WANG, the
defendants.  The Partners, among other things, allowed LIU to
use their enrollments with the Insurance Providers to bill for
physical therapy and acupuncture services that were unnecessary
and/or were not rendered.

23.  In addition, JUNYI LIU, a/k/a "Jenny," the defendant,
and the Partners, or others employed by LIU and the Partners,
created medical documentation falsely stating that certain
physical therapy and acupuncture examinations and services were
medically necessary and had been rendered when such services, in
fact, were not medically necessary and/or were not rendered.
Individuals employed by LIU thereafter used the enrollments with
the Insurance Providers of LIU and the Partners, as well as the

false medical documentation created by LIU and the Partners or their subordinates to submit fraudulent claims for reimbursement, which claims caused the Insurance Providers to reimburse LIU and the Partners for the unnecessary and/or never rendered physical therapy and acupuncture services. LIU and the Partners thereafter divided the proceeds of the scheme amongst themselves and their subordinates.

24. In furtherance of the scheme, JUNYI LIU, a/k/a "Jenny," the defendant, employed, hired, and caused to be hired receptionists, cashiers, marketers, financial and billing personnel, acupuncturists, massagists, and other personnel, to help coordinate and carry out the fraud scheme. The cashiers so hired and employed included ZIHAO CHEN, the defendant.

25. During the relevant period, certain individuals, known and unknown, recruited and referred beneficiaries of the Insurance Providers to the Offices. The beneficiaries received cash kickbacks in exchange for their insurance information and their signatures on sign-in sheets and other documents. In some instances, these Paid Patients visited the Offices, signed in, and received unnecessary physical therapy and acupuncture services. In other instances, the Paid Patients visited the Offices, signed a sign-in sheet and other documents, and then left without receiving any services at all. In yet other instances, the Paid Patients did not visit the Offices at all

and instead signed sign-in sheets and other documents brought to them elsewhere.  Regardless of whether the Paid Patients received any services or even visited the Offices at all, the Co-Conspirators used the beneficiaries' insurance information to fraudulently bill the Insurance Providers for unnecessary and/or never rendered services.

26.  Typically, JUNYI LIU, a/k/a "Jenny," delivered cash to the Offices to be used for the cash kickbacks, which kickbacks were thereafter paid inside and outside the Offices by ZIHAO CHEN, the defendant, and by others known and unknown.  For example:

a. On or about July 9, 2021, LIU delivered approximately $26,000 in cash to one of the Offices, which cash was used by CHEN, on or about July 12, 2021, to pay kickbacks to Paid Patients.

b. On or about August 6, 2021, LIU delivered approximately $35,000 in cash to CHEN at one of the Offices, which cash was used by CHEN, on or about August 9, 2021, to pay kickbacks to Paid Patients.

27.  The proceeds of the scheme were generally shared between JUNYI LIU, a/k/a "Jenny," the defendant, and her Partners, as were the costs of the cash kickbacks for the Paid Patients, which were in some instances labeled "transportation

fees" but in fact bore no connection to any actual transportation expenses. For example:

a. On or about July 28, 2021, GERARD ESTRELLA, the defendant, in the presence of and with the agreement of RAMON GARCIA, III, the defendant, signed and hand delivered to LIU a check made out to Wonderful Acupuncture, P.C., in the amount of $13,326.85 drawn from a bank account in the name of Frank Zhan Physical Therapy, P.C., which check, among other things, reimbursed LIU for approximately $2,430 that was paid in kickbacks to Paid Patients for receiving medically unnecessary and/or non-existent treatments at one of the Offices, which treatments were billed to one or more Insurance Providers.

b. On or about the same date, ESTRELLA, in the presence of and with the agreement of GARCIA, signed and hand delivered to LIU three checks made out to HBL Acupuncture, P.C. totaling $147,509.70 drawn from a bank account in the name of Frank Zhan Physical Therapy, P.C., which checks, among other things, reimbursed LIU for approximately $38,135.00 that was paid in kickbacks to Paid Patients for receiving medically unnecessary and/or non-existent treatments at one of the Offices, which treatments were billed to one or more Insurance Providers.

c. On or about the same date, HENLER DATU TAHIL, the defendant, caused to be delivered to LIU three checks made out to HBL Acupuncture, P.C. totaling $72,864.40 drawn from a bank

account in the name of HDT Tender Loving Care Physical Therapy, P.C., which checks, among other things, reimbursed LIU for approximately $20,340.00 that was paid in kickbacks to Paid Patients for receiving medically unnecessary and/or non-existent treatments at one of the Offices, which treatments were billed to one or more Insurance Providers.

28.   Throughout the scheme, the Co-Conspirators submitted or caused the Offices to submit materially false and fraudulent claims to the Insurance Providers to deceive them into paying for physical therapy and acupuncture services that were medically unnecessary and, in many instances, not provided at all.  For example:

a. On or about January 22, 2020, a confidential source ("CS-1") acting at the direction of law enforcement visited one of the Offices.  CS-1 spent a total of approximately seven minutes at the Office and received no treatment or services but received a $50 cash kickback.  Nevertheless, the Co-Conspirators submitted or caused to be submitted claims to CS-1's Insurance Provider seeking reimbursement for multiple physical therapy services (purportedly provided by RAMON GARCIA, III, the defendant) and for multiple acupuncture services (purportedly provided by JUNYI LIU, a/k/a "Jenny," the defendant) that were purportedly rendered on that date.

b. Similarly, on or about August 18, 2020, CS-1, acting at the direction of law enforcement, visited one of the Offices. CS-1 spent a total of approximately 13 minutes at the Office and received no treatment or services.  Nevertheless, the Co-Conspirators submitted or caused to be submitted claims to CS-1's Insurance Provider seeking reimbursement for multiple physical therapy services (purportedly provided by MOHAMED ELMANDOUH, the defendant) that were purportedly rendered on that date.

29.   Indeed, in some instances, the Co-Conspirators submitted or caused the Offices to submit materially false and fraudulent claims to the Insurance Providers to deceive them into paying for physical therapy and acupuncture services that were purportedly rendered on dates when the relevant Partner was not even present at the Offices.  For example:

a. In or around December 2018, GLEEN ANCIRO, the defendant, submitted or caused to be submitted claims to an Insurance Provider that claimed that ANCIRO had treated approximately 36 patients at one of the Offices on December 10, 2018, when in truth and in fact ANCIRO was on a cruise on that date.

b. In or about September 2019, NOEMI ALGODON, the defendant, submitted or caused to be submitted claims to an Insurance Provider that claimed that ALGODON had treated

- 13 -

approximately 33 patients at one of the Offices on September 22, 2019, when in truth and in fact ALGODON was outside of the United States on that date.

c. In or about January 2020, HONGXING WANG, the defendant, submitted or caused to be submitted claims to an Insurance Provider that claimed that WANG had treated approximately 20 patients on January 13, 2020, when in truth and in fact WANG was outside of the United States on that date.

30.  In furtherance of the scheme, JUNYI LIU, a/k/a "Jenny," the defendant, and certain of the Co-Conspirators, known and unknown, contracted with and/or enrolled scheme participants with certain Insurance Providers because, for example, other Insurance Providers would no longer pay for services rendered by certain of the scheme participants.  In some instances, to facilitate such contracts and/or enrollments, LIU and certain of her Co-Conspirators agreed to give cash and other kickbacks to certain employees of such companies.  For example:

a. On or about March 26, 2021, LIU and RAMON GARCIA, III, the defendant, agreed to pay an employee of a particular health insurance company $5,000 if the employee successfully facilitated a contract between the company and the Offices that would allow scheme participants to submit claims to the company.

b. On or about July 28, 2021, GARCIA and GERARD ESTRELLA, the defendant, signed and hand delivered to LIU a check made out to HBL Acupuncture, P.C., totaling $900.00 drawn from a bank account in the name of Frank Zhan Best Physical Therapy, P.C., which check reimbursed LIU for the purchase of wine given to one or more employees of another health insurance company in order to facilitate enrollment with the company of one or more scheme participants.

STATUTORY ALLEGATIONS

31. From at least in or about June 2018 through at least in or about September 2021, in the Southern District of New York and elsewhere, JUNYI LIU, a/k/a "Jenny," GLEEN ANCIRO, NOEMI ALGODON, MOHAMED ELMANDOUH, GERARD ESTRELLA, RAMON GARCIA, III, HENLER DATU TAHIL, HONGXING WANG, and ZIHAO CHEN, the defendants, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit health care fraud, to wit, to cause Medicare and Other Insurance Providers to pay for fraudulent health care claims for unnecessary and unperformed physical therapy and acupuncture services claimed to have been provided to Medicare and other Insurance Provider beneficiaries, in violation of Title 18, United States Code, Section 1347.

32. It was a part and object of the conspiracy that JUNYI LIU, a/k/a "Jenny," GLEEN ANCIRO, NOEMI ALGODON, MOHAMED

ELMANDOUH, GERARD ESTRELLA, RAMON GARCIA, III, HENLER DATU TAHIL, HONGXING WANG, and ZIHAO CHEN, the defendants, and others known and unknown, knowingly and willfully, would and did execute, and attempt to execute, a scheme and artifice to defraud a health care benefit program and to obtain, by means of false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, health care benefit programs, as that term is defined in Title 18, United States Code, Section 24(b), in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347.

(Title 18, United States Code, Section 1349.)

### COUNT TWO

(Conspiracy to Violate the Anti-Kickback Statute)

The Grand Jury further charges:

33.   The allegations set forth in paragraphs 1 through 30 are incorporated by reference as if set forth fully herein.

34.   From at least in or about June 2018 through at least in or about September 2021, in the Southern District of New York and elsewhere, JUNYI LIU, a/k/a "Jenny," GLEEN ANCIRO, NOEMI ALGODON, MOHAMED ELMANDOUH, GERARD ESTRELLA, RAMON GARCIA, III, HENLER DATU TAHIL, HONGXING WANG, and ZIHAO CHEN, the defendants, together with others known and unknown, knowingly and willfully did combine, conspire, confederate, and agree together and with each other to

commit an offense against the United States, to wit, to violate
the Anti-Kickback Statute, in violation of Title 42, United States
Code, Section 1320a-7b(b)(2)(B).

35.   It was a part and an object of the conspiracy that
JUNYI LIU, a/k/a "Jenny," GLEEN ANCIRO, NOEMI ALGODON, MOHAMED
ELMANDOUH, GERARD ESTRELLA, RAMON GARCIA, III, HENLER DATU
TAHIL, HONGXING WANG, and ZIHAO CHEN, the defendants, and others
known and unknown, knowingly and willfully would and did offer
and pay remuneration (including kickbacks), directly and
indirectly, overtly and covertly, in cash and in kind, to one
and more persons to induce such person to purchase, lease,
order, and arrange for and recommend purchasing, leasing, and
ordering a good, facility, service, and item for which payment
may be made in whole and in part under a federal health care
program, in violation of Title 42, United States Code, Section
1320a-7b(b)(2)(B).

OVERT ACTS

36.   In furtherance of the conspiracy and to effect the
illegal objects thereof, JUNYI LIU, a/k/a "Jenny," GLEEN ANCIRO,
NOEMI ALGODON, MOHAMED ELMANDOUH, GERARD ESTRELLA, RAMON GARCIA,
III, HENLER DATU TAHIL, HONGXING WANG, and ZIHAO CHEN, the
defendants, and others known and unknown, committed the
following overt acts, among others, in the Southern District of
New York and elsewhere:

a. On or about July 9, 2021, LIU delivered approximately $26,000 in cash to one of the Offices, which cash was used CHEN, on or about July 12, 2021, to pay kickbacks to Paid Patients.

b. On or about August 6, 2021, LIU delivered approximately $35,000 in cash to CHEN at one of the Offices, which cash was used by CHEN, on or about August 9, 2021, to pay kickbacks to Paid Patients.

c. On or about July 28, 2021, ESTRELLA, in the presence of and with the agreement of RAMON GARCIA, signed and hand delivered to LIU a check made out to Wonderful Acupuncture, P.C., in the amount of $13,326.85 drawn from a bank account in the name of Frank Zhan Physical Therapy, P.C., which check, among other things, reimbursed LIU for approximately $2,430 that was paid in kickbacks to Paid Patients for receiving medically unnecessary and/or non-existent treatments at one of the Offices, which treatments were billed to health insurance companies.

d. On or about July 28, 2021, ESTRELLA, in the presence of and with the agreement of GARCIA, signed and hand delivered to LIU three checks made out to HBL Acupuncture, P.C. totaling $147,509.70 drawn from a bank account in the name of Frank Zhan Physical Therapy, P.C., which checks, among other things, reimbursed LIU for approximately $38,135.00 that was paid in

kickbacks to Paid Patients for receiving medically unnecessary and/or non-existent treatments at one of the Offices, which treatments were billed to health insurance companies.

e. On or about July 28, 2021, TAHIL caused to be delivered to LIU three checks made out to HBL Acupuncture, P.C. totaling $72,864.40 drawn from a bank account in the name of HDT Tender Loving Care Physical Therapy, P.C., which checks, among other things, reimbursed LIU for approximately $20,340.00 that was paid in kickbacks to Paid Patients for receiving medically unnecessary and/or non-existent treatments at one of the Offices, which treatments were billed to health insurance companies.

(Title 18, United States Code, Section 371.)

COUNT THREE

(Conspiracy to Commit Money Laundering)

The Grand Jury further charges:

37.   The allegations contained in paragraphs 1 through 30 of this Indictment are repeated and realleged as if fully set forth herein.

38.   From at least in or about June 2018 through at least in or about September 2018, in the Southern District of New York and elsewhere, JUNYI LIU, a/k/a "Jenny," GLEEN ANCIRO, NOEMI ALGODON, MOHAMED ELMANDOUH, GERARD ESTRELLA, RAMON GARCIA, III, HENLER DATU TAHIL, HONGXING WANG, and ZIHAO CHEN, the

- 19 -

defendants, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the money laundering laws of the United States.

39.   It was a part and an object of the conspiracy that JUNYI LIU, a/k/a "Jenny," GLEEN ANCIRO, NOEMI ALGODON, MOHAMED ELMANDOUH, GERARD ESTRELLA, RAMON GARCIA, III, HENLER DATU TAHIL, HONGXING WANG, and ZIHAO CHEN, the defendants, and others known and unknown, knowing that the property involved in certain financial transactions, to wit, check and cash transactions, represented the proceeds of some form of unlawful activity, would and did conduct and attempt to conduct such financial transactions, which in fact involved the proceeds of specified unlawful activities, to wit, the federal health care offenses charged in Counts One and Two of this Indictment, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i).

(Title 18, United States Code, Section 1956(h).)

## COUNT FOUR

(Wire Fraud)

The Grand Jury further charges:

40.   The allegations contained in paragraphs 1 through 30 of this Indictment are repeated and realleged as if fully set forth herein.

## THE COVID-19 BENEFITS FRAUD SCHEME

### BACKGROUND

41.   Unemployment Insurance ("UI") is a state-federal program that provides monetary benefits to eligible lawful workers. In the State of New York, the New York Department of Labor ("NY DOL") administers the UI program.

42.   As part of the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, UI eligibility was expanded to provide assistance as a result of the ongoing COVID-19 pandemic. In total, more than $300 billion in additional federal funds for UI benefits was appropriated since in or about March 2020 ("COVID-19 Benefits").

43.   The NY DOL offered an online website ("the Website") through which applicants could apply for COVID-19 Benefits, among other things, and verify unemployment status.  In order to apply for COVID-19 Benefits through the Website, an applicant was required to complete a form that included, among other things, the applicant's name, date of birth, social security number, and address.  In addition, the applicant could direct

that the NY DOL send any approved funds to a specific bank
account.

44.   An applicant filing for COVID-19 Benefits through the
Website was required to submit an online application.   If the
application was approved, the applicant was required to log on
to the Website on a weekly basis thereafter to certify his/her
continued unemployment status and efforts to seek employment.

THE FRAUDULENT COVID-19 APPLICATIONS

45.   Between in or about April 2020 and in or about
September 2021, JUNYI LIU, a/k/a "Jenny," the defendant,
executed a fraudulent scheme to unlawfully enrich herself and a
member of her family (the "Family Member") by submitting and
causing to be submitted to NY DOL materially false online
applications and certifications for COVID-19 Benefits.   In
furtherance of the scheme, LIU directed employees of the Offices
to file such applications and certifications on behalf of her
and the Family Member.   These applications and certifications
were false in multiple respects.   For example:

a. On or about April 15, 2020, LIU filed or caused to
be filed an application for COVID-19 Benefits on behalf of
herself, which application falsely represented, among other
things: (i) that her last employer was Wonderful Acupuncture,
P.C., when, in fact, she controlled Wonderful Acupuncture, P.C.;
and (ii) that she was not and had not served as a corporate

officer within the previous 18 months, when, in fact, she had done so.

　　b. From in or around June 2020 through at least in or around September 2021, LIU filed or caused to be filed weekly certifications that falsely represented that LIU did not work during the relevant week, when, in fact, LIU continued to operate the Offices for all or nearly all of this period.

　　c. On or about August 14, 2020, LIU filed or caused to be filed an application for COVID-19 Benefits on behalf of the Family Member, which application falsely represented, among other things, that the Family Member had not worked for a relative within the previous 18 months when, in fact, the Family Member had been employed by LIU at one or more of the Offices during that period.

　　d. From in or around August 2020 through at least in or around August 2021, including during an approximately five-month period during which the Family Member was in China, LIU filed or caused to be filed weekly certifications on behalf of the Family Member that falsely represented that the Family Member was unable to work because of COVID-19.

　　46. As a consequence of the above-described COVID-19 benefits fraud scheme, JUNYI LIU, a/k/a "Jenny," the defendant, and the Family Member unlawfully received a combined sum of at least approximately $40,000 in COVID-19 Benefits.

STATUTORY ALLEGATIONS

47.   From at least in or about April 2020 through at least
in or about September 2021, in the Southern District of New York
and elsewhere, JUNYI LIU, a/k/a "Jenny," the defendant,
willfully and knowingly, having devised and intending to devise
a scheme and artifice to defraud, and for obtaining money and
property by means of false and fraudulent pretenses,
representations, and promises, did transmit and cause to be
transmitted by means of wire, radio, and television
communication in interstate and foreign commerce, writings,
signs signals, pictures, and sounds, for the purpose of
executing such scheme and artifice, to wit, LIU fraudulently
submitted or caused to be submitted online applications for
unemployment benefits for herself and another individual, and in
the course of the scheme caused electronic communications to be
transmitted through the Southern District of New York.

(Title 18, United States Code, Sections 1943 and 2.)

COUNT FIVE

(Theft of Government Funds)

The Grand Jury further charges:

48.   The allegations contained in paragraphs 1 through 30
and 41 through 46 of this Indictment are repeated and realleged
as if fully set forth herein.

49.   From at least in or about April 2020 through at least
in or about September 2021, in the Southern District of New York
and elsewhere, JUNYI LIU, a/k/a "Jenny," the defendant, did
embezzle, steal, purloin, and knowingly convert to her use and
the use of another, and without authority, did sell, convey, and
dispose of records, vouchers, money, and things of value of the
United States and a department and agency thereof, to wit, the
United States Department of Labor, which exceeded the sum of
$1,000, and did receive, conceal, and retain the same with
intent to convert it to his use and gain, knowing it to have
been embezzled, stolen, purloined and converted, to wit, LIU
received fraudulently obtained COVID-19 unemployment insurance
benefits.

(Title 18, United States Code, Sections 641 and 2.)

### FORFEITURE ALLEGATIONS

50.   As a result of committing the offenses charged in
Counts One and Two of this Indictment, JUNYI LIU, a/k/a "Jenny,"
GLEEN ANCIRO, NOEMI ALGODON, MOHAMED ELMANDOUH, GERARD ESTRELLA,
RAMON GARCIA, III, HENLER DATU TAHIL, HONGXING WANG, and ZIHAO
CHEN, the defendants, shall forfeit to the United States,
pursuant to Title 18, United States Code, Section 982(a)(7), any
and all property, real or personal, that constitutes or is
derived, directly or indirectly, from gross proceeds traceable
to the commission of said offenses, including but not limited to

a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses.

51. As a result of committing the offense charged in Count Three of this Indictment, JUNYI LIU, a/k/a "Jenny," GLEEN ANCIRO, NOEMI ALGODON, MOHAMED ELMANDOUH, GERARD ESTRELLA, RAMON GARCIA, III, HENLER DATU TAHIL, HONGXING WANG, and ZIHAO CHEN, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any and all property, real and personal, involved in said offense, or any property traceable to such property, including but not limited to a sum of money in United States currency representing the amount of property involved in said offense.

52. As a result of committing the offenses charged in Counts Four and Five of this Indictment, JUNYI LIU, a/k/a "Jenny," the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses.

## Substitute Asset Provision

53.   If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

     a.   cannot be located upon the exercise of due diligence;

     b.   has been transferred or sold to, or deposited with, a third person;

     c.   has been placed beyond the jurisdiction of the Court;

     d.   has been substantially diminished in value; or

     e.   has been commingled with other property which cannot be subdivided without difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), and Title 28, United States Code, Section 2461(c) to seek forfeiture of any other property of the defendants up to the value of the above forfeitable property.

(Title 18, United States Code, Sections 981 and 982;
Title 21, United States Code, Section 853; and
Title 28, United States Code, Section 2461.)

_____
FOREPERSON

_____
AUDREY STRAUSS
United States Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

JUNYI LIU, a/k/a "Jenny," GLEEN ANCIRO,
NOEMI ALGODON, MOHAMED ELMANDOUH, GERARD
ESTRELLA, RAMON GARCIA, III, HENLER DATU
TAHIL, HONGXING WANG, and ZIHAO CHEN,

Defendants.

SEALED INDICTMENT

21 Cr. ____ (____)

(18 U.S.C. §§ 371, 641, 1343, 1349,
1956, and 2)

AUDREY STRAUSS
United States Attorney.

A TRUE BILL

Foreperson.