P3RKLIUP

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4               v.                         21 CR 592 (LTS)

5   JUNYI LIU,

6                                          Conference
                    Defendant.
7   ------------------------------x

8
                                           New York, N.Y.
9                                          March 27, 2025
                                           2:30 p.m.
10

11  Before:

12                  HON. LAURA TAYLOR SWAIN,

13                                         Chief Judge

14                      APPEARANCES

15  MATTHEW D. PODOLSKY
         United States Attorney for the
16       Southern District of New York
    TIMOTHY CAPOZZI
17  JERRY JIA-WEI FANG
         Assistant United States Attorneys
18
    KEVIN J. KEATING
19       Attorney for Defendant

20  Also Present:

21  SHI FENG, Mandarin Interpreter

22

23

24

25

P3RKLIUP

| | |
|---|---|
| 1 | (Case called) |
| 2 | THE COURT:  Good afternoon.  Counsel, would you state |
| 3 | your appearances, please. |
| 4 | MR. CAPOZZI:  Good afternoon, your Honor. |
| 5 | Timothy Capozzi and Jerry Fang, for the United States. |
| 6 | THE COURT:  Good afternoon, Mr. Capozzi; good |
| 7 | afternoon, Mr. Fang. |
| 8 | MR. FANG:  Good afternoon, your Honor. |
| 9 | MR. KEATING:  Good afternoon, your Honor. |
| 10 | Kevin Keating, for Ms. Liu. |
| 11 | THE COURT:  Good afternoon, Mr. Keating. |
| 12 | Where is the interpreter? |
| 13 | MR. KEATING:  She must have just stepped out.  She was |
| 14 | all set up.  Maybe she went into the ladies' room. |
| 15 | THE COURT:  Let's wait for the interpreter. |
| 16 | MR. KEATING:  Nobody noticed. |
| 17 | (Pause) |
| 18 | THE COURT:  So, for the benefit of Ms. Liu, let's just |
| 19 | do the appearances again.  We'll start from the beginning. |
| 20 | MR. CAPOZZI:  Good afternoon, your Honor. |
| 21 | Timothy Capozzi and Jerry Fang, for the United States. |
| 22 | THE COURT:  Good afternoon, Mr. Capozzi and Mr. Fang. |
| 23 | MR. FANG:  Good afternoon. |
| 24 | MR. KEATING:  Good afternoon, your Honor. |
| 25 | Kevin Keating, for Ms. Liu. |

P3RKLIUP

1              THE COURT:  Good afternoon, Mr. Keating.

2              And good afternoon, Ms. Liu.

3              Ms. Feng, are you interpreting from English to

4    Mandarin and vice versa?

5              THE INTERPRETER:  Yes.

6              THE COURT:  Ms. Liu, are you able to hear the

7    interpretation clearly through the headphones?

8              THE DEFENDANT:  I can hear her, yes.

9              THE COURT:  And can you understand the interpreter?

10             THE DEFENDANT:  I understand.

11             THE COURT:  So, if, at any point, you have difficulty

12   hearing through the earphones or understanding the interpreter,

13   please let Mr. Keating know or raise your hand so that we can

14   fix the problem.  All right?

15             THE DEFENDANT:  Understood.

16             THE COURT:  Thank you.

17             I understand that Ms. Liu has an application to

18   withdraw her not-guilty plea and plead guilty to Count One of

19   the five-count second superseding indictment that is captioned

20   S2:21 CR 592.

21             Is that correct, Mr. Keating?

22             MR. KEATING:  That's correct, your Honor.

23             THE DEFENDANT:  Yes.

24             THE COURT:  And is the plea pursuant to the plea

25   agreement with a printed date of March 17, 2025, and an

P3RKLIUP

1    execution date of March 27, 2025?

2              MR. KEATING:  Yes.

3              THE COURT:  Mr. Keating, do you have an executed copy

4    of that agreement marked as Government Exhibit 1 there at

5    defense table?

6              MR. KEATING:  I do.

7              THE COURT:  Do you also have at defense table an

8    executed copy of the Advice of Rights Form marked as Court

9    Exhibit 1?

10             MR. KEATING:  Yes, your Honor.

11             THE COURT:  Mr. Capozzi, would you make a statement

12   regarding the government's victim identification and

13   notification activity in connection with this proceeding?

14             MR. CAPOZZI:  Your Honor, the victims of this case

15   were notified of this proceeding on March 21st of this year.

16             THE COURT:  Thank you.

17             Ms. Liu, before I accept your guilty plea, there are a

18   number of questions that I must ask you while you're under oath

19   to assure that your plea is valid.  At times, I may cover a

20   point more than once, and I may cover matters that were also

21   addressed in the Advice of Rights Form that you have seen.  If

22   that happens, it will be because it is very important that you

23   understand what is happening here today.

24             If you don't understand something that I ask you,

25   please say so, and I will reword the question, or you may speak

P3RKLIUP

1    with your attorney.  Do you understand that?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Please stand now to take the oath.

4              (Defendant sworn)

5              THE COURT:  Would you please remain standing for a

6    moment, and please state your full name for the record.

7              THE DEFENDANT:  My name?

8              THE COURT:  Yes.

9              THE DEFENDANT:  (In English)  Last name L-i-u, first

10   name J-u-n-y-i.

11             THE COURT:  Ms. Liu, do you understand that you have

12   solemnly promised to tell the truth, and that if you answer any

13   of my questions falsely, your false or untrue answers may later

14   be used against you in another prosecution for perjury or

15   making a false statement?

16             THE DEFENDANT:  (Through Interpreter)  Understood.

17             THE COURT:  You may be seated for the next series of

18   questions.

19             THE DEFENDANT:  Thank you.

20             THE COURT:  What is your age, Ms. Liu?

21             THE DEFENDANT:  This year, I am fifty -- 71 years old.

22             THE COURT:  How far did you go in your formal

23   schooling?

24             THE DEFENDANT:  I graduated college.

25             THE COURT:  What was your field of study?

P3RKLIUP

1              THE DEFENDANT:  Traditional Chinese medicine major.

2              THE COURT:  Are you able to speak, read, and

3    understand the Mandarin Chinese language well?

4              THE DEFENDANT:  (In English) Mandarin.

5              THE COURT:  And you can read that as well as speak and

6    understand Mandarin?

7              THE DEFENDANT:  (Through Interpreter) Yes.

8              THE COURT:  Do you also speak English?

9              THE DEFENDANT:  A little.

10             THE COURT:  Are you a citizen of the United States?

11             THE DEFENDANT:  I have a green card.

12             THE COURT:  Are you now, or have you recently been,

13   under the care of a doctor or a psychiatrist?

14             THE DEFENDANT:  I have stage four lung cancer.

15             THE COURT:  I'm very sorry to hear that.

16             Does the condition affect your ability to think

17   clearly?

18             THE DEFENDANT:  I am fine for now because I took

19   controlling painkillers.

20             THE COURT:  Do the painkillers affect your ability to

21   think clearly?

22             THE DEFENDANT:  No, it does not.

23             THE COURT:  Have you ever been treated or hospitalized

24   for any mental illness or for any type of addiction, including

25   drug or alcohol addiction?

P3RKLIUP

|    |                                                              |
|----|--------------------------------------------------------------|
| 1  | THE DEFENDANT:  No.                                           |
| 2  | THE COURT:  Have you ever been addicted to any drugs          |
| 3  | or alcohol?                                                   |
| 4  | THE DEFENDANT:  I am allergic to alcohol.                     |
| 5  | THE COURT:  In the past 24 hours, have you taken any          |
| 6  | drugs, medicine, or pills?                                    |
| 7  | THE DEFENDANT:  I took medication.                            |
| 8  | THE COURT:  Is that the pain medication that you              |
| 9  | mentioned?                                                    |
| 10 | THE DEFENDANT:  Yes, and also the medication which            |
| 11 | treats cancer.                                                |
| 12 | THE COURT:  And did you take that medication on               |
| 13 | schedule and as directed by your doctor?                      |
| 14 | THE DEFENDANT:  Yes.                                          |
| 15 | THE COURT:  Is your mind clear today?                         |
| 16 | THE DEFENDANT:  I am clear right now, today.                  |
| 17 | THE COURT:  Do you feel comfortable making important          |
| 18 | decisions for yourself today?                                 |
| 19 | THE DEFENDANT:  Yes.                                          |
| 20 | THE COURT:  Are you represented by a lawyer here              |
| 21 | today?                                                        |
| 22 | THE DEFENDANT:  Yes.  Kevin.                                  |
| 23 | THE COURT:  Mr. Keating, do you have any doubt as to          |
| 24 | Ms. Liu's competence to enter a plea at this time?            |
| 25 | MR. KEATING:  No, your Honor.                                 |

P3RKLIUP

1          THE COURT:  Mr. Capozzi?

2          MR. CAPOZZI:  No, your Honor.

3          THE COURT:  Thank you.

4          Ms. Liu, your attorney has told me that you want to

5    withdraw your not-guilty plea and plead guilty to one count of

6    the indictment.

7          Do you wish to plead guilty?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Have you fully discussed your case with

10    your attorney, including the charge to which you intend to

11    plead guilty, and any defenses that you may have to that

12    charge?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Have you and your attorney also discussed

15    the consequences of pleading guilty?

16          THE DEFENDANT:  I know that.

17          THE COURT:  So, have you and your attorney actually

18    talked about the consequences of pleading guilty?

19          THE DEFENDANT:  We discussed it.

20          THE COURT:  Are you satisfied with your attorney and

21    his representation of you?

22          THE DEFENDANT:  Satisfied.

23          THE COURT:  On the basis of Ms. Liu's responses to my

24    questions and my observations of her demeanor, I find that she

25    is fully competent to enter an informed plea at this time.

P3RKLIUP

1          Before I accept your plea, I am going to ask you some

2    more questions.  These questions are intended to satisfy the

3    Court that you want to plead guilty because you are, in fact,

4    guilty, and that you fully understand your rights and the

5    consequences of your plea.

6          I will now describe to you certain rights that you

7    have under the Constitution and laws of the United States.  You

8    will be giving up these rights if you plead guilty.  Please

9    listen carefully.  If you don't understand something that I am

10    saying or describing, stop me, and I or your attorney will

11    explain it more fully.

12          Under the Constitution and laws of the United States,

13    you have the right to a speedy and public trial by a jury on

14    the charges against you that are in the indictment.  Do you

15    understand that?

16          THE DEFENDANT:  Understood.

17          THE COURT:  Do you understand that you have the right

18    to plead not guilty and to continue to plead not guilty to each

19    of the charges?

20          THE DEFENDANT:  I do not understand.  What do you

21    mean?  Could you repeat that?

22          THE COURT:  You have the right, in response to each of

23    the charges, to say that you are not guilty, and you don't have

24    to change that.  That's called pleading not guilty.  And you

25    can continue to plead not guilty to each of the charges in the

P3RKLIUP

1    indictment.

2            Do you understand that?

3            THE DEFENDANT:  Understood.

4            THE COURT:  If there were a trial, you would be

5    presumed innocent, and the government would be required to

6    prove you guilty by competent evidence and beyond a reasonable

7    doubt.  You would not have to prove that you were innocent at a

8    trial.

9            Do you understand that?

10            THE DEFENDANT:  Understood.

11            THE COURT:  If there were a trial, a jury composed of

12    12 people selected from this district would have to agree

13    unanimously in order to find you guilty.  Do you understand

14    that?

15            THE DEFENDANT:  Understood.

16            THE COURT:  If there were a trial, you would have the

17    right to be represented by an attorney at the trial and at all

18    other stages of the proceedings, and if you could not afford

19    one, an attorney would be provided to you free of cost.

20            Do you understand that?

21            THE DEFENDANT:  Understood.

22            THE COURT:  If there were a trial, you would have the

23    right to see and hear all of the witnesses against you, and

24    your attorney could cross-examine them.  Do you understand

25    that?

P3RKLIUP

1              THE DEFENDANT:  Understood.

2              THE COURT:  You would also have the right to have your

3    attorney object to the government's evidence and offer evidence

4    on your behalf, if you so desired.  Do you understand that?

5              THE DEFENDANT:  Understood.

6              THE COURT:  Also, you would have the right to have

7    witnesses required to come to court to testify in your defense.

8    Do you understand that?

9              THE DEFENDANT:  Understood.

10             THE COURT:  And you would have the right to testify

11   yourself, but you would not be required to testify.  Do you

12   understand that?

13             THE DEFENDANT:  Understood.

14             THE COURT:  Do you understand that if there were a

15   trial, and you decided not to testify, no adverse inference

16   could be drawn against you based on your decision not to

17   testify?

18             THE DEFENDANT:  Understood.

19             THE COURT:  Do you understand that if you were

20   convicted at a trial, you would have the right to appeal that

21   verdict?

22             THE DEFENDANT:  Understood.

23             THE COURT:  Do you understand each and every one of

24   the rights that I have asked you about?

25             THE DEFENDANT:  Understood.

P3RKLIUP

1          THE COURT:  Do you have any questions about any of

2    these rights?

3          THE DEFENDANT:  Understood.

4          THE COURT:  Do you now have any questions that you

5    want to ask me or your attorney about any of the rights?

6          THE DEFENDANT:  No questions.

7          THE COURT:  Do you understand that by pleading guilty

8    today, you will be giving up each and every one of the rights

9    that we have talked about?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Do you also understand that you will be

12    giving up any possible claim that your constitutional rights

13    may have been violated?

14          THE DEFENDANT:  Yes.

15          THE COURT:  Do you understand that if you plead guilty

16    today, you will not have a trial?

17          THE DEFENDANT:  Yes.

18          THE COURT:  Do you understand that, by pleading

19    guilty, you will also have to give up your right not to

20    incriminate yourself, because I will ask you questions about

21    what you did in order to satisfy myself that you are guilty as

22    charged, and you will have to admit and acknowledge your guilt?

23          THE DEFENDANT:  Yes.

24          THE COURT:  Do you understand that you can change your

25    mind right now and refuse to plead guilty?  You do not have to

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

P3RKLIUP

 1    enter this plea if you do not want to for any reason.  Do you

 2    understand that fully?

 3                THE DEFENDANT:  Understood.

 4                THE COURT:  Do you still want to plead guilty?

 5                THE DEFENDANT:  Guilty, yes.

 6                THE COURT:  You want to plead guilty; is that correct?

 7                THE DEFENDANT:  (In English)  Yes, yes, yes.

 8                THE COURT:  Have you received a copy of the second

 9    superseding indictment, that is, the document that explains the

10    charges against you and has the number S2:21 CR 592 at the top?

11                THE DEFENDANT:  (Through Interpreter)  Yes, I know

12    that.

13                THE COURT:  Has that been provided to you in Mandarin?

14                THE DEFENDANT:  No.

15                THE COURT:  Has it been read to you in Mandarin?

16                THE DEFENDANT:  Oh, I hired interpreter.  Interpreter

17    interpreted it for me.

18                THE COURT:  So the interpreter read it to you; is that

19    correct?

20                THE DEFENDANT:  Yes.

21                THE COURT:  Have you discussed the indictment with

22    your attorney?

23                THE DEFENDANT:  Yes.

24                THE COURT:  If you want me to, I will read the charge

25    in Count One of the second superseding indictment out loud for

P3RKLIUP

1    you here in court.

2            Would you like me to read it out loud for you now with

3    the interpreter interpreting it into Mandarin?

4            THE DEFENDANT:  (In English)  No.

5            THE COURT:  The record will reflect that the defendant

6    has waived the public reading of the indictment.

7            Do you understand that Count One of the indictment

8    charges you with violating Title 18 of the United States Code,

9    Section 1349, by participating in a conspiracy to commit

10   healthcare fraud, in violation of Title 18 of the United States

11   Code, Section 1347?

12           THE DEFENDANT:  (Through Interpreter) I know.

13           THE COURT:  Do you understand that the government

14   would have to prove each and every part, or element, of this

15   charge beyond a reasonable doubt at a trial if you did not

16   plead guilty?

17           THE DEFENDANT:  Understood.

18           THE COURT:  Mr. Capozzi, would you please explain what

19   the government would have to prove if Ms. Liu did not plead

20   guilty to Count One.

21           MR. CAPOZZI:  Your Honor, if this case proceeded to

22   trial, the government would have to prove the following

23   elements beyond a reasonable doubt:

24           First, the existence of an agreement to commit

25   healthcare fraud;

P3RKLIUP

1          And, second, the defendant knowingly and willfully

2     became a member of the conspiracy.

3          The elements of healthcare fraud consist of:

4          First, the existence of either a scheme to defraud or

5     artifice to defraud, or a scheme or artifice to obtain money or

6     property by means of materially false and fraudulent pretenses,

7     representations, or promises, in connection with the delivery

8     of payment for healthcare benefits, items, or services;

9          Second, the defendant knowingly and willfully executed

10    or attempted to execute the scheme with the intent to defraud,

11    or the defendant knowingly and intentionally aided and abetted

12    others in the same;

13         And, third, the target of the scheme was a healthcare

14    benefit program.

15         In addition, the government would need to prove, by a

16    preponderance of the evidence, that venue is proper in the

17    Southern District of New York.

18         THE COURT:  Ms. Liu, do you understand what the

19    government would have to prove if you did not plead guilty?

20         THE DEFENDANT:  I know.

21         THE COURT:  Do you understand that the maximum

22    possible penalty for the crime charged in Count One is

23    ten years of imprisonment, plus a fine of the greatest of

24    $250,000, twice the gain resulting from the offense, or twice

25    the loss to other people resulting from the offense, plus a

P3RKLIUP

1    $100 special assessment, plus three years of supervised release

2    after your term of imprisonment, plus full restitution to all

3    persons injured by your criminal conduct?

4           Do you understand that?

5           THE DEFENDANT:  Understood.

6           THE COURT:  I will now give you some information and

7    verify your understanding of the supervised release aspect of

8    the potential penalty.

9           Supervised release means that you will be subject to

10   monitoring when you are released from prison.  Terms and

11   conditions will be imposed.  If you violate any of the set

12   terms and conditions, you can be sent back to prison without a

13   jury trial.

14          If you are on supervised release, and you do not

15   comply with any of the set terms or conditions, you can be sent

16   back to prison for up to two years.  You will be given no

17   credit for the time that you served in prison as a result of

18   your sentence and no credit for any time spent on postrelease

19   supervision.

20          So, as an example, if you received a prison term, and

21   then a three-year term of supervised release, and after you

22   left prison, you lived up to the terms of supervised release

23   for almost three years, but then you violated some term of the

24   supervised release, you could be sent back to prison for two

25   whole years.

P3RKLIUP

1              Do you understand that?

2              Would you please say that out loud.

3              THE DEFENDANT:  Understood.

4              THE COURT:  Do you also understand that, as a result

5      of your guilty plea, it is very likely that your removal from

6      the United States will be mandatory, and that, at a minimum,

7      you risk being removed or suffering other immigration

8      consequences?

9              Do you understand that?

10             THE DEFENDANT:  (In English)  Yeah.

11             THE COURT:  Do you understand, for example --

12             THE DEFENDANT:  (Through Interpreter)  Understood.

13             THE COURT:  So, for example, do you understand that

14     you could be denied citizenship in the future and denied

15     admission to the United States in the future?

16             THE DEFENDANT:  Understood.

17             THE COURT:  Have you discussed the possible

18     immigration consequences of your plea with your lawyer?

19             THE DEFENDANT:  We did.

20             THE COURT:  Do you understand that you will be bound

21     by your guilty plea regardless of the immigration consequences

22     and regardless of any advice that you may have received from

23     your counsel or others regarding any immigration consequences?

24             Would you like me to ask that again?

25             THE DEFENDANT:  I do not really understand.

P3RKLIUP

1          THE COURT:  Okay.

2          You have indicated that you want to plead guilty

3    today; is that correct?

4          THE DEFENDANT:  Yes.

5          THE COURT:  So, do you understand that you will not be

6    able to take back that guilty plea even if there are bad

7    immigration consequences that happen because you've pled

8    guilty?

9          THE DEFENDANT:  I know that.

10          THE COURT:  And do you understand that even if your

11    lawyer or anyone else has told you that those bad things won't

12    happen, you still won't be able to take back your guilty plea?

13          THE DEFENDANT:  Understood.

14          THE COURT:  Under current law, there are sentencing

15    guidelines that judges must consider in determining your

16    sentence.

17          Have you spoken to your attorney about the sentencing

18    guidelines?

19          THE DEFENDANT:  We did.

20          THE COURT:  Do you understand that, in determining

21    your sentence, the Court must calculate the applicable

22    sentencing guidelines range and consider that range, possible

23    departures under the sentencing guidelines, and other

24    sentencing factors under Title 18 of the United States Code,

25    Section 3553(a)?

1            THE DEFENDANT:  Understood.

2            THE COURT:  Do you understand that the Court has

3    discretion, while taking the guidelines into account, to

4    sentence you to any period of imprisonment from time served all

5    the way up to the statutory maximum of ten years?

6            THE DEFENDANT:  Understood.

7            THE COURT:  Do you understand that even though your

8    plea agreement includes the stipulated, or agreed, sentencing

9    guidelines calculation, the Court will not be able to determine

10   your sentence until after a presentence report has been

11   completed by the probation office and you and the government

12   have had a chance to challenge any of the facts reported by the

13   probation office?

14           THE DEFENDANT:  Understood.

15           THE COURT:  Do you understand that you may have the

16   right to appeal your sentence under certain circumstances, even

17   if your plea agreement provides that you are waiving your right

18   to appeal?

19           THE DEFENDANT:  I know that.

20           THE COURT:  Do you understand that if your attorney or

21   anyone else has attempted to estimate or predict what your

22   sentence will be, their estimate, or prediction, could be

23   wrong?

24           THE DEFENDANT:  I know that.

25           THE COURT:  No one, not even your attorney or the

P3RKLIUP

1  government, can or should give you any assurance of what your

2  sentence will be because your sentence cannot be determined

3  until after the probation office report is completed and I have

4  ruled on the challenges to the report and I have determined

5  what the appropriate sentence is.

6       Do you understand this?

7       THE DEFENDANT:  I know that.

8       THE COURT:  Do you also fully understand that even if

9  your sentence is different from what your attorney or anyone

10  else told you it might be, or if it is different from what you

11  expect, you will still be bound to your guilty plea, and you

12  will not be allowed to withdraw your guilty plea?

13       THE DEFENDANT:  Understood.

14       THE COURT:  Your plea agreement provides, on page 3,

15  that the stipulated sentencing guideline range is from 108 to

16  120 months of imprisonment.

17       Do you understand that this stipulation does not bind

18  the Court or the probation office as to the facts on which it

19  is based, as to how to apply the guidelines to the facts, or as

20  to what will be an appropriate sentence in your case?

21       THE DEFENDANT:  Could you repeat that?

22       THE COURT:  Actually, Mr. Keating, could you turn to

23  page 3 of the plea agreement and point to that paragraph.

24       MR. KEATING:  Yes.  Although this is in English, of

25  course.

P3RKLIUP

1          THE COURT:  Yes.

2          But do you read numbers in English, Ms. Liu?

3          THE DEFENDANT:  I know.

4          THE COURT:  And so I'll ask you the question again

5    now:  The portion of the plea agreement on page 3 that

6    Mr. Keating has just shown you says that the stipulated, or

7    agreed, sentencing guideline range between you and the

8    government is from 108 to 120 months of imprisonment.

9          My question to you is:  Do you understand that this

10   agreement does not bind the Court or the probation office as to

11   the facts on which it is based, as to how to apply the

12   guidelines to the facts, or as to what will be an appropriate

13   sentence in your case?

14         THE DEFENDANT:  I understand that.

15         THE COURT:  Do you understand that I may decide to

16   impose a sentence that is outside of that guidelines range?

17         THE DEFENDANT:  Yes, understood.

18         THE COURT:  Are you now serving any state or federal

19   sentence, or are you being prosecuted for any other crime?

20         THE DEFENDANT:  No.

21         THE COURT:  Do you understand that the indictment also

22   includes a forfeiture allegation, in which the government

23   asserts that you are required to forfeit to the United States

24   any and all property, real or personal, that constitutes or is

25   derived, directly or indirectly, from gross proceeds traceable

P3RKLIUP

 1    to the commission of the crime charged in Count One?

 2            THE DEFENDANT:  Understood.

 3            THE COURT:  Would you please look again at the plea

 4    agreement, which is Government Exhibit 1.

 5            Have you signed this agreement?

 6            THE DEFENDANT:  I did.

 7            THE COURT:  Was it read to you in Mandarin before you

 8    signed it?

 9            THE DEFENDANT:  Yes.

10            THE COURT:  Did you discuss it with your attorney

11    before you signed it?

12            THE DEFENDANT:  We did.

13            THE COURT:  Did you fully understand the agreement

14    before you signed it?

15            THE DEFENDANT:  Understood.

16            THE COURT:  Does the agreement reflect accurately your

17    complete and total understanding of the entire agreement

18    between the government, your attorney, and you?

19            THE DEFENDANT:  I know that.

20            THE COURT:  Is everything that you understand about

21    your plea and sentence covered in the agreement?

22            THE DEFENDANT:  Yes.

23            THE COURT:  Has anything been left out?

24            THE DEFENDANT:  I don't know.

25            THE COURT:  Well, when you were going over the

P3RKLIUP

1    agreement with your attorney, was there anything that you

2    expected to hear about that was part of the agreement, that you

3    did not hear about in that conversation?

4              THE DEFENDANT:  No.

5              THE COURT:  Has anybody made any promises to you,

6    other than what is written in that plea agreement, or

7    threatened you or forced you to plead guilty or to enter into

8    the plea agreement?

9              THE DEFENDANT:  No.

10             THE COURT:  Do you understand that this agreement, on

11   page 2, includes a stipulation that you agree that the loss

12   attributable to your crime is more than $9,500,000, but less

13   than $25 million?

14             THE DEFENDANT:  I know.

15             THE COURT:  Do you understand that this loss amount

16   affects sentencing calculations under the sentencing

17   guidelines?

18             THE DEFENDANT:  I know that.

19             THE COURT:  Do you understand that you are under no

20   obligation to make an agreement with the government as to the

21   loss amount?

22             THE DEFENDANT:  Yes.

23             THE COURT:  Do you agree that the loss amount

24   attributable to your crime was more than $9,500,000, but less

25   than $25 million?

P3RKLIUP

1              THE DEFENDANT:  I know that.

2              THE COURT:  Do you understand that the plea agreement

3    also includes a stipulation that you agree that the loss to a

4    government healthcare program was more than $20 million?

5              THE DEFENDANT:  I know that.

6              THE COURT:  Do you understand that the size of the

7    loss to the government healthcare program affects sentencing

8    calculations under the sentencing guidelines?

9              THE DEFENDANT:  I know that.

10             THE COURT:  Do you understand that you are under no

11   obligation to make an agreement with the government as to the

12   amount of loss to a government healthcare program?

13             THE DEFENDANT:  I know.

14             THE COURT:  And do you agree that the loss to the

15   government healthcare program was more than $20 million?

16             THE DEFENDANT:  I know that.

17             THE COURT:  Do you understand that the plea agreement

18   includes a stipulation that you agree that you were an

19   organizer or leader of a criminal activity that involved five

20   or more participants or was otherwise extensive?

21             THE DEFENDANT:  I know.

22             THE COURT:  Do you understand that your role in the

23   criminal activity affects sentencing calculations under the

24   guidelines?

25             THE DEFENDANT:  I know.

P3RKLIUP

1           THE COURT:  Do you understand that you are under no

2    obligation to make an agreement with the government as to your

3    role in the criminal activity?

4           THE DEFENDANT:  I know that.

5           THE COURT:  Do you agree that you were an organizer or

6    leader of a criminal activity that involved five or more

7    participants or was otherwise extensive?

8           THE DEFENDANT:  I know.

9           THE COURT:  Do you understand that the agreement

10   provides, on pages 1 and 2, that you are admitting the

11   forfeiture allegation in the indictment, and that you agree

12   that you must forfeit to the United States property, including,

13   but not limited to:

14          First, $15,368,171 in United States currency;

15          Second, $230,352.53 in United States currency that was

16   seized from a bank account held in the name of HDT Tender

17   Loving Care Physical Therapy;

18          Also, $411,820.75 in United States currency seized

19   from a bank account held in the name of HBL Acupuncture;

20          And $854,188.58 in United States currency seized from

21   a bank account held in your name.

22          Do you understand that's what your plea agreement

23   provides that you will forfeit?

24          THE DEFENDANT:  I know.

25          THE COURT:  Do you understand that you're under no

P3RKLIUP

1   obligation to make an agreement with the government as to

2   anything that you are required to forfeit?

3           THE DEFENDANT:  Could you repeat that?

4           THE COURT:  Do you understand that you are under no

5   obligation to make an agreement with the government as to any

6   amount that you are required to forfeit?

7           THE DEFENDANT:  I know that.

8           THE COURT:  Do you understand that anything that you

9   do forfeit will not count against any other fine, penalty, or

10  restitution that the Court may impose as part of your sentence?

11          THE DEFENDANT:  I know.

12          THE COURT:  I have been given a consent preliminary

13  order of forfeiture and money judgment, which appears to have

14  been signed by the parties.

15          Mr. Capozzi, would you please explain how the

16  forfeiture amounts provided in this agreement were derived and

17  how the specific property was identified as forfeitable?

18          MR. CAPOZZI:  Yes, your Honor.

19          The forfeiture figure is calculated based on the

20  amount of fraud proceeds that were deposited into bank accounts

21  under the control of this defendant.  And that applies to both

22  the 15,368,171 figure, as well as the specific amounts, which

23  are amounts that were in accounts that received fraud proceeds

24  that were seized by the government.

25          THE COURT:  Thank you.

P3RKLIUP

1          Mr. Keating, have you thoroughly reviewed the proposed

2    consent preliminary order of forfeiture and money judgment?

3          MR. KEATING:  Yes, your Honor.

4          THE COURT:  Have you discussed it thoroughly with

5    Ms. Liu?

6          MR. KEATING:  I have.

7          THE COURT:  Has it been read to Ms. Liu in Mandarin?

8          MR. KEATING:  Yes.

9          THE COURT:  And does the defense have any objections

10   to the form or the content of the proposed order?

11         MR. KEATING:  No, your Honor.

12         THE COURT:  Ms. Liu, have you discussed the proposed

13   consent preliminary order of forfeiture and money judgment with

14   your attorney?

15         THE DEFENDANT:  Yes.

16         THE COURT:  And do you understand that if I sign this,

17   this is a court order requiring that you must pay as forfeiture

18   more than $15 million and give up the money held in the bank

19   accounts that I described?

20         THE DEFENDANT:  What is the $15 million?

21         THE COURT:  Mr. Capozzi, would you explain that again,

22   please?

23         MR. CAPOZZI:  Yes, your Honor.

24         The forfeiture figure, the $15 million figure, is the

25   amount of proceeds of the fraud that were transferred into

P3RKLIUP

```
 1   accounts controlled by this defendant.  Specifically, I believe
 2   they were accounts held in the name of HBL and Wonderful.
 3            THE COURT:  And so that $15 million is different from,
 4   and in addition to, the money in the other bank accounts that
 5   are mentioned in the order; is that correct?
 6            MR. CAPOZZI:  Your Honor, certainly with respect to
 7   the HDT Tender Loving Care and the funds in the Junyi Liu
 8   account in her name.  I'm just pausing for a moment to think
 9   about the account that's also in the name of HBL.
10            (Pause)
11            MR. CAPOZZI:  Your Honor --
12            THE COURT:  Actually, I see paragraph 10 provides that
13   specific property forfeited will be applied toward the
14   satisfaction of the $15 million.
15            So, am I correct in understanding that the $15 million
16   is the total amount of the forfeiture obligation, and, to the
17   extent that the government actually gets the money listed for
18   the other bank accounts, that's subtracted from the
19   $15 million?
20            MR. CAPOZZI:  Thank you, your Honor.  I believe that's
21   correct.  That is what paragraph 10, that the parties have
22   agreed to, provides, that the funds in the specific property,
23   to the extent that they are recovered by the government, will
24   be credited against the $15 million figure that is owed in the
25   money judgment.
```

P3RKLIUP

1          THE COURT:  So the $15 million figure is the amount

2     that the government calculated, and the parties agreed,

3     represents all of the money that Ms. Liu received through this

4     scheme that was in bank accounts?

5          MR. CAPOZZI:  Correct, your Honor.

6          THE COURT:  Thank you.

7          Ms. Liu, do you understand that now, about the

8     $15 million?

9          THE DEFENDANT:  Could you show me that again?

10         THE COURT:  So this agreement provides that, as

11    forfeiture, money that you're giving up that you gained through

12    your crimes, you have to pay the United States Government a

13    total of $15,368,171.  It also provides that --

14         THE INTERPRETER:  Your Honor, I apologize, she is

15    interjecting saying something.  I heard you both at the same

16    time.  She said:  I do not have that amount of money.

17         THE COURT:  Mr. Keating, would you like to speak with

18    Ms. Liu?

19         MR. KEATING:  I would, just for a moment, your Honor.

20         Could I borrow you, please?

21         THE COURT:  And if you want, you can push the

22    microphones away.

23         MR. KEATING:  Yes.

24         (Counsel conferred with defendant)

25         MR. KEATING:  We are ready, your Honor.

P3RKLIUP

1    THE DEFENDANT:  Understood.

2    THE COURT:  And so you understand that you will be

3 required to pay $15,368,171 as forfeiture to the United States,

4 but the amounts in the bank accounts that we have talked about

5 will be credited toward that $15 million, they are part of that

6 $15 million?

7    Do you understand that?

8    THE DEFENDANT:  Understood.

9    THE COURT:  And have you signed this order providing

10 for the forfeiture liability?

11    THE DEFENDANT:  I signed it.

12    THE COURT:  And, Mr. Keating, have you also signed it?

13    THE DEFENDANT:  Yes, your Honor.

14    THE COURT:  So, I will sign and enter it in connection

15 with today's proceeding.

16    Ms. Liu, do you understand that your plea agreement

17 provides, on page 4, that you will not file a direct appeal or

18 challenge by petition, pursuant to Title 28 of the United

19 States Code, Section 2255, or any other legal provision, your

20 conviction?

21    THE DEFENDANT:  Understood.

22    THE COURT:  Do you understand that you have no

23 obligation to enter into this stipulation concerning any appeal

24 or challenge of your conviction?

25    THE DEFENDANT:  I know that.

P3RKLIUP

1              THE COURT:  Do you understand that, also, on page 4,

2    the plea agreement provides that you are giving up, or waiving,

3    your right to appeal and your right to litigate or challenge

4    your sentence collaterally, including, but not limited to, an

5    application under Title 28 of the United States Code,

6    Section 2255, or any other legal provision, if I sentence you

7    to 120 or fewer months of imprisonment?

8              Do you understand?

9              THE DEFENDANT:  Understood.

10              THE COURT:  Do you understand that on page 5, your

11    agreement provides that you will not appeal or challenge any

12    term of supervised release that is three years or shorter?

13              THE DEFENDANT:  I know.

14              THE COURT:  Do you understand that the agreement also

15    provides that you will not appeal or challenge any condition of

16    supervised release imposed by the Court of which you had notice

17    and to which you had an opportunity to object?

18              THE DEFENDANT:  Understood.

19              THE COURT:  Do you understand that the agreement

20    provides that you will not appeal or challenge any fine of

21    $300,000 or less?

22              THE DEFENDANT:  I know.

23              THE COURT:  Do you understand that the agreement also

24    includes a stipulation that you will be responsible for paying

25    $23,855,425 in restitution, pursuant to Title 18 of the United

P3RKLIUP

1    States Code, Section 3663A(a)(1)?

2         THE DEFENDANT:  I know.

3         THE COURT:  Do you understand that it also provides

4    that you will be responsible for paying an additional $40,075

5    in restitution to the New York State Department of Labor,

6    pursuant to Title 18, Section 3663A(a)(3)?

7         THE DEFENDANT:  Understood.

8         THE COURT:  Do you understand that this money, the

9    restitution money, is different from, and in addition to, the

10   $15 million of forfeiture that we spoke about earlier?

11        THE DEFENDANT:  Understood.

12        THE COURT:  Do you understand that you are under no

13   obligation to make an agreement with the government as to the

14   amount of your restitution obligation?

15        THE DEFENDANT:  Understood.

16        THE COURT:  Do you understand that your stipulation as

17   to your restitution obligations is not binding on the Court or

18   the probation department, and that the amounts that you will be

19   required to pay as restitution and the identity of your victim

20   or victims will not be determined until the time of your

21   sentencing?

22        THE DEFENDANT:  Understood.

23        THE COURT:  Do you understand that your plea agreement

24   includes your promise not to appeal or challenge any

25   restitution order of $23,855,425 or less?

P3RKLIUP

 1            THE DEFENDANT:  Yes.

 2            THE COURT:  Do you understand that the plea agreement

 3    provides that you are affirming that you want to plead guilty

 4    regardless of any immigration consequences of your plea and

 5    conviction, even possible deportation, and that you will not be

 6    able to withdraw your guilty plea based on any immigration

 7    consequences of your plea and conviction?

 8            THE DEFENDANT:  Understood.

 9            THE COURT:  Do you understand that your agreement

10    provides that you are giving up your right to appeal or to

11    litigate or challenge your sentence collaterally under Title 28

12    of the United States Code, Sections 2255 and/or 2241, on the

13    basis of any adverse immigration consequences that may result

14    from your guilty plea and conviction?

15            THE DEFENDANT:  I know.

16            THE COURT:  Do you understand that you are under no

17    obligation to waive your rights to appeal or otherwise litigate

18    any aspect of your sentence?

19            THE DEFENDANT:  I know.

20            THE COURT:  Do you understand that the appeal and

21    collateral challenge waiver provisions that we have just

22    discussed do not affect whatever rights you may have to assert

23    claims of ineffective assistance of counsel, whether on direct

24    appeal, collateral review, or otherwise?

25            THE DEFENDANT:  Understood.

P3RKLIUP

1            THE COURT:  Do you understand that on page 5, the

2    agreement provides that you are giving up your right to

3    withdraw your plea or attack your conviction, either on direct

4    appeal or collaterally, on the ground that the government

5    failed to produce any discovery material, Jencks Act material,

6    exculpatory material pursuant to the Supreme Court's *Brady v.*

7    *Maryland* decision, other than information establishing your

8    factual innocence, or impeachment material pursuant to the

9    Supreme Court's *Giglio v. United States* decision, that has not

10   already been produced as of the date of your plea agreement?

11           THE DEFENDANT:  Understood.

12           THE COURT:  Do you understand that your agreement

13   provides that you will not move for a downward departure under

14   the sentencing guidelines or seek any adjustment under the

15   guidelines that is not described in the plea agreement, but

16   that you can make arguments for a lower sentence under the

17   general sentencing statute that is known as Section 3553(a)?

18           THE DEFENDANT:  Understood.

19           THE COURT:  Do you understand that even if the

20   government does not oppose or take a position on what your

21   attorney will ask as a sentence, I am free to impose whatever

22   sentence I believe is appropriate under the circumstances and

23   the applicable law, and you will have no right to withdraw your

24   plea?

25           THE DEFENDANT:  Understood.

P3RKLIUP

1          THE COURT:  Do you still want to plead guilty pursuant

2   to this plea agreement?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Mr. Keating, do you know of any valid

5   reason why Ms. Liu would prevail at trial?

6          MR. KEATING:  No, your Honor.

7          THE COURT:  Do you know of any reason why she should

8   not be permitted to plead guilty?

9          MR. KEATING:  No.

10          THE COURT:  Ms. Liu, would you please tell me what you

11   did that makes you guilty of the crime charged in Count One of

12   the indictment.

13          The interpreter --

14          THE INTERPRETER:  She did not finish her sentence.

15   I'm waiting for her to finish the later part of her sentence;

16   otherwise, it will be broken.

17          THE COURT:  Yes.

18          MR. KEATING:  Could I have one moment, please?

19          THE COURT:  Yes.

20          MR. KEATING:  Ms. Interpreter.

21          (Counsel conferred with defendant)

22          THE DEFENDANT:  From approximately 2018 to 2021, I was

23   a licensed acupuncturist, and I offered office location in New

24   York City.

25          I partnered with a licensed physical therapist and

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

P3RKLIUP

1    acupuncturist, including codefendants in this case.

2           During this time, I reached agreement with those

3    physical therapists and acupuncturists who submitted false

4    claims for payments to insurance carriers in connection with

5    the physical therapy and acupuncture services rendered to our

6    patients.

7           Among other things, I was aware that many of our

8    patients would receive cash payment from our office as

9    inducement for the patients to utilize our service.

10          While this is a common and widespread practice in our

11   community, I know that disclosure of these payments to the

12   insurance carriers would result in a denial of our claims.

13          Accordingly, I and organizers wrongfully withhold the

14   existence of these payments from the insurance carriers.

15          Additionally, as part of our agreement, I was aware

16   that, at times, insurance carriers were billed for our patient

17   services that were, in fact, not fully provided as set forth in

18   our claims.  I knew these activities were wrong.

19          THE COURT:  Did you have an agreement with your

20   partners that the carriers would be billed for services that

21   were not provided?

22          (Pause)

23          MR. KEATING:  Your Honor, could you repeat your

24   question, please?

25          THE COURT:  Was it part of your agreement with your

P3RKLIUP

partners, the physical therapists and the acupuncturists, that
insurance companies would sometimes be billed for services that
were not actually provided?

THE DEFENDANT:  At times, that would happen, yes.

THE COURT:  Did you agree that that would happen?

THE DEFENDANT:  Yes.

THE COURT:  And what was the purpose of billing for
services that were not rendered, and paying patients to visit
the practices?

THE DEFENDANT:  We paid them to get them to come to
our practice.

THE COURT:  Was that in order for your practice to
make money in connection with their use of your practices?

THE DEFENDANT:  Increase profit.

THE COURT:  Was that profit profit that came from
providing services that were actually given?

THE DEFENDANT:  At times, yes; at times, lacking, did
not provide the full service.  At times, yes; at times, no.

THE COURT:  I noticed that when you made your full
statement, you were reading from some notes.

How did those notes come to be prepared?

THE DEFENDANT:  Yes, I prepared with my attorney
together.

THE COURT:  So, is everything that you have told me
from those notes, about what you did and what you knew, the

P3RKLIUP

1   truth?

2           THE DEFENDANT:  Pretty much, yes.

3           THE COURT:  Is there anything that was not the truth?

4           THE DEFENDANT:  Yes, the truth.

5           THE COURT:  All of it is the truth?

6           THE DEFENDANT:  Yes.

7           THE COURT:  And the health insurance carriers that you

8   referred to, were any of those government programs?

9           THE DEFENDANT:  Could you repeat that?

10          THE COURT:  You mentioned that bills were rendered to

11  health insurance carriers, or companies.

12          Were any of those health insurance carriers, or

13  payors, government programs?

14          (Counsel conferred with defendant)

15          THE DEFENDANT:  Regardless, we charged for the

16  physical therapy, and government paid those, but we mostly

17  giving out acupunctures for free.

18          THE COURT:  Did your practice receive money for the

19  services that were not provided properly from a government

20  program?

21          MR. KEATING:  If I could have one moment, please?

22          THE COURT:  Yes.

23          (Counsel conferred with defendant)

24          THE DEFENDANT:  Yes.

25          THE COURT:  Thank you.

P3RKLIUP

1          Mr. Capozzi, are there any further factual matters

2     that the government would like me to ask Ms. Liu to address in

3     her plea allocution?

4          MR. CAPOZZI:  No, your Honor, but the government would

5     proffer that reimbursement checks from insurers, consisting of

6     fraud proceeds, were mailed to scheme participants located in

7     Manhattan, and that certain of the patients, whose information

8     was used in billings, fraudulent billings, resided in

9     Manhattan.

10         THE COURT:  And would you please summarize the

11    government's evidence against Ms. Liu?

12         MR. CAPOZZI:  Yes, your Honor.

13         If this case proceeded to trial, the government's

14    evidence would include testimony from witnesses, including

15    coconspirators of the defendant and employees of the defendant;

16    it would include text messages between the defendant and her

17    coconspirators; it would include recordings of patient visits

18    to one of the offices at which the scheme was operated; it

19    would include medical records from one of the offices; it would

20    include bank records reflecting the defendant and her

21    coconspirators' receipt of fraud proceeds, as well as insurer

22    records reflecting the fraudulent billings.

23         THE COURT:  Is it the government's position that this

24    body of evidence would be sufficient to prove guilt beyond a

25    reasonable doubt?

P3RKLIUP

1           MR. CAPOZZI:  Yes, your Honor.

2           THE COURT:  Thank you.

3           Ms. Liu, would you please stand with your attorney

4    now.

5           Ms. Liu, how do you now plead to the charge in

6    Count One of the second superseding indictment?  Do you plead

7    not guilty or guilty?

8           THE DEFENDANT:  Guilty.

9           THE COURT:  Are you pleading guilty because you are,

10   in fact, guilty?

11          THE DEFENDANT:  Yes.

12          THE COURT:  Are you pleading guilty voluntarily and of

13   your own free will?

14          THE DEFENDANT:  Yes.

15          THE COURT:  Mr. Keating, would you please show Ms. Liu

16   Court Exhibit 1, the Advice of Rights Form.

17          Ms. Liu, have you signed this form?

18          THE DEFENDANT:  I did.

19          THE COURT:  Was it read to you in Mandarin before you

20   signed it?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Did you discuss it with your attorney

23   before you signed it?

24          THE DEFENDANT:  We have.

25          THE COURT:  And did you understand it before you

P3RKLIUP

1    signed it?

2            THE INTERPRETER:  Could you repeat the question one

3    more time, your Honor?

4            THE COURT:  Did you understand the form before you

5    signed the form?

6            THE DEFENDANT:  Understood.

7            THE COURT:  Mr. Keating, did you also review and sign

8    Court Exhibit 1?

9            MR. KEATING:  Yes, your Honor.

10           THE COURT:  Mr. Keating, are there any other questions

11   that you believe I should ask Ms. Liu in connection with the

12   plea?

13           MR. KEATING:  No.

14           THE COURT:  Mr. Capozzi, are there any other questions

15   that you believe I should ask in connection with the plea?

16           MR. CAPOZZI:  No, your Honor.

17           THE COURT:  Ms. Liu, you have acknowledged that you

18   are guilty as charged in Count One of the second superseding

19   indictment.

20            I find that you know your rights, and that you are

21   waiving them voluntarily.

22           Because your plea is entered knowingly and

23   voluntarily, and is supported by an independent basis in fact,

24   containing each of the essential elements of the offense, I

25   accept your guilty plea, and I adjudge you guilty of the

P3RKLIUP

1    offense charged in Count One of the indictment captioned

2    S2:21 CR 592.

3              Mr. Keating, do you wish to be present for any

4    interview of Ms. Liu in connection with the presentence report?

5              MR. KEATING:  Yes, your Honor.

6              THE COURT:  I will make that direction.

7              And you may both be seated.

8              Ms. Ng, may I have a sentencing date, please?

9              THE DEPUTY CLERK:  Wednesday, July 16, 2025, at

10   11:00 a.m.

11             THE COURT:  Counsel, are you available on July 16th,

12   at 11:00 a.m.?

13             MR. KEATING:  I am.

14             MR. CAPOZZI:  Yes, your Honor.

15             THE COURT:  Sentencing is set for July 16, 2025, at

16   11:00 in the morning.

17             Counsel, please make sure to get your comments and

18   objections back promptly to the probation office after the

19   first disclosure of the report.  And please make your

20   sentencing submissions in accordance with the submission

21   provisions of my individual practices, which are on the

22   website.

23             Mr. Capozzi and Mr. Fang, would you make sure to get

24   the factual summary from the government to probation within the

25   next two weeks?

P3RKLIUP

1          MR. CAPOZZI:  Yes, your Honor.

2          THE COURT:  And, Mr. Keating, would you make sure to

3   be in contact with probation within two weeks to set a prompt

4   interview date?

5          MR. KEATING:  Yes, your Honor.

6          THE COURT:  Thank you.

7          Ms. Liu, the probation office will be preparing a

8   presentence report to assist me in sentencing you.  You will be

9   interviewed by the probation office.  It is important that the

10  information that you give to the probation officer be truthful

11  and accurate.  The report is important in my decision as to

12  what your sentence will be.  You and your attorney have a right

13  and will have an opportunity to examine the report, to

14  challenge or comment on it, and to speak on your behalf before

15  sentencing.

16          Failing to be truthful with the probation office and

17  the Court may have an adverse effect on your sentence and may

18  subject you to prosecution.

19          Do you understand that?

20          THE DEFENDANT:  Understood.

21          THE COURT:  Are there any applications with respect to

22  changes in release conditions pending sentencing?

23          MR. CAPOZZI:  Not from the government, your Honor.

24          THE COURT:  Not from the defense?

25          MR. KEATING:  Correct.

P3RKLIUP

1          THE COURT:  I will continue the current conditions of

2     bail pending sentencing.

3          Ms. Liu, do you understand that all of the conditions

4     on which you have been released up until now continue to apply,

5     and that the consequences of violating any of those conditions

6     can be severe?

7          THE DEFENDANT:  I know.

8          THE COURT:  Do you also understand that if you fail to

9     return to my courtroom for sentencing on the date and time set,

10    you will be guilty of a criminal act for which you could be

11    sentenced to imprisonment separate, apart from, and in addition

12    to any other sentence that you might receive for the crime to

13    which you have just pleaded guilty?

14         THE DEFENDANT:  I know.

15         THE COURT:  Then I will fully expect to see you on the

16    sentencing date.

17         Counsel, is there anything else that we need to take

18    up together this afternoon?

19         MR. CAPOZZI:  No, your Honor.  Thank you.

20         MR. KEATING:  No, your Honor.  Thank you very much.

21         THE COURT:  Thank you, all.

22         And thank you to the interpreter and the court

23    reporter, as well.

24         And stay safe and keep well, everyone.  We are

25    adjourned.

P3RKLIUP

1              MR. CAPOZZI:  Thank you.

2              THE DEFENDANT:  Thank you.

3              THE COURT:  Thank you.

4              (Adjourned)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25